NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KWEE LING TAN<br><br>Plaintiff,<br><br>v.<br><br>MR. PI'S SUSHI, INC. d/b/a MR. PI'S JAPANESE RESTAURANT, PEI YAN FANG, and SHAO JIAN CHEN a/k/a JEANETTE CHEN<br><br>Defendants. | Civ. Action No. 09-1579 (KSH)<br><br><br><br>**OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I. Introduction**

Shao Zhen Chen, incorrectly sued as Shao Jian Chen and also known as Jeanette Chen ("Chen"), is one of three defendants in the within matter, a suit brought by plaintiff Kwee Ling Tan ("Tan") to recover unpaid wages, overtime compensation, and damages under the federal Fair Labor Standards Act ("FLSA") and New Jersey's Wage and Hour and labor laws. Chen has moved for partial summary judgment on the grounds that she was not Tan's employer as that term is defined by the FLSA.

Chen is married to another defendant in this case, Pei Yan Fang ("Fang"), also known as Mr. Pi. (Chen Reply Certif. ¶ 1.) Fang is the sole owner of the third defendant, Mr. Pi's Sushi, Inc., which does business as Mr. Pi's Japanese Restaurant ("Mr. Pi's") in Metuchen, N.J. (Fang Certif. ¶¶ 1–2.) From April 8, 2003 until January 4, 2009, Tan worked as a waitress at Mr. Pi's (Tan Aff. ¶ 1.), and she claims that during the majority of that time, the defendants

1

paid her only $100 per week and did not pay her overtime, even though she worked, on average, 10 to 11 hours each day, six days a week (Am. Compl. ¶¶ 1, 30–35, 37–38).  Tan also claims that the defendants improperly retained tips that she and the rest of the wait staff had earned.  (*Id.* ¶¶ 42–50.)  Her first amended complaint requests relief on four claims: (1) that the defendants willfully refused to pay her a minimum wage and overtime pay and willfully failed to keep employment records, in violation of the FLSA; (2) that the defendants intentionally refused to pay her a minimum wage and overtime pay and intentionally failed to keep employment records, in violation of the New Jersey Wage and Hour Law; (3) that the defendants willfully diverted tips and wages due to her, in violation of New Jersey labor law; and (4) that the defendants retaliated against her for filing this lawsuit by threatening her.  (Am. Compl. ¶¶ 70–88.)

Chen argues that she is not a proper defendant in this action because she was not Tan's employer.  She moved for partial summary judgment, seeking to dismiss the wage, overtime, and tips claims, but not the retaliation claim.  [D.E. 55.]

**II. Summary Judgment Standard**

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears the burden of demonstrating that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A court considering a motion for summary judgment must "resolve conflicting evidence in favor of the nonmovant," refrain from engaging in credibility determinations, and "draw all reasonable inferences in favor of the nonmovant." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir.1994)). Summary judgment will be granted if the evidence is such that no reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 249.

**III. Discussion**

The FLSA has a liberal, remedial purpose, *Maldonado v. Lucca*, 629 F. Supp. 483, 487 (D.N.J. 1986), and therefore, the term "employer" is interpreted broadly. *Reich v. Chez Robert, Inc.*, 821 F. Supp. 967, 985 (D.N.J. 1993), *vacated and remanded on other grounds*, 28 F.3d 401 (3d Cir. 1994). The Act states that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. §203(d); in keeping with this expansive definition, the consensus among courts is that the determination of whether a person is an employer cannot be limited to technical concepts, but must be viewed in accordance with economic realities. *See, e.g.*, *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); *Reich v. Gateway Press, Inc.* 13 F.3d 685, 695 n.12 (3d Cir. 1994) ("This court and others have often applied an 'economic reality' test when interpreting the FLSA."); *U.S. Dep't of Labor v. Cole Enters.*, 62 F.3d 775, 778 (6th Cir. 1995); *Maldonado*, 629 F. Supp. at 487. Indeed, the definition is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees." *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 194-95 (5th Cir.). Furthermore, for purposes of the FLSA, an employee may have more than one employer.

*Maldonado*, 629 F. Supp. at 487; *Reich v. PTC Career Inst.*, 1994 U.S. Dist. LEXIS 8503, 3-4 (E.D. Pa. June 24, 1994) (citing Falk v. Brennan, 414 U.S. 190, 195 (1973)).

A final determination depends on the totality of the circumstances, *Maldonado*, 629 F. Supp. at 487 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)), including consideration of, among others, the following factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Because of the fact-intensive nature of the inquiry, an employer determination can rarely be made on summary judgment. *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 144 (2d Cir. 2008). Indeed, "[w]hether a person or corporation is an employer or joint employer is essentially a question of fact." *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 329 (D.N.J. 2005) (quoting *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir.1968)). In this case, the pleadings, depositions and affidavits filed by the parties reveal that there is a genuine issue of material fact as to whether Chen is an employer under the FLSA.

**A. Chen's Role in Hiring and Firing**

In regard to the first factor, Tan states that Chen made hiring and firing decisions. In her deposition, Tan said that when she called the restaurant to inquire about a job, she spoke to Chen, who informed Tan that the restaurant was looking for a waitress, described the job, and told her what the hours and wages were and when the restaurant's van would pick her up to bring her to work in the morning. (Tan Dep. 37:4–19, 41:18–42:11.) Tan further stated that Chen consulted with her husband about sushi chef applicants, but made decisions about

cashiers without talking to Fang. (*Id.* 92:5–23.) In particular, Tan heard from a new cashier that Chen had personally hired the new cashier and fired the old one. (*Id.* 95:4–16.) Furthermore, Tan said that she observed Chen place classified ads in the newspaper, and that Chen's personal cell phone number was listed on the ads. (*Id.* 90:6–7, 91:17–20.) Chen disputes that she was vested with the authority to hire and fire. She recounted the initial phone call with Tan differently, stating that she told Tan she would talk to Fang and that Fang would meet Tan in Chinatown the following day, when Fang would decide whether to hire her. (Chen Dep. 30:10–33:15.) Fang also stated that his wife never hired or fired any employees. (Fang Dep. 27:18–21.) Chen concedes that she took calls to screen job applicants, but contends that she did so only when Fang was too busy to field calls. (Chen Certif. ¶ 2.) Viewing this evidence in the light most favorable to Tan, the contradictory views of Chen's role in the hiring and firing process at Mr. Pi's require a credibility determination, which is inappropriate at the summary judgment stage. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010). The first factor, therefore, militates against a grant of summary judgment for Chen.

### B. Chen's Role in Setting the Work Schedule

An examination of the second factor also suggests that summary judgment is not warranted. Tan said in her deposition that Chen made the work schedule, though no printed schedule existed. (Tan Dep. 102:5–13.) Moreover, when Tan needed a day off, she had to ask Chen. (*Id.* 96:4–14.) According to Tan, Chen also dictated the tasks she did at work, including washing dishes, cleaning toilets, cleaning soy sauce bottles, and cutting food. (*Id.* 140:4–20.) Chen stated that all she does at the restaurant is help out by, for example, cleaning tables, packaging takeout orders, and taking phone calls. (Chen Dep. 24:23–25:23.) She said that she could not have supervised Tan because she did not go to the restaurant every week (*Id.* 12:7–

14:12), while Tan contends that, for most of the time Tan worked at Mr. Pi's, Chen was there six days a week, every week (Tan Dep. 93:8–94:5).  Fang supports his wife's view; in his deposition, he said that Chen did not work full-time, but only came to the restaurant occasionally, and that Chen did not set work schedules.  (Fang Dep. 41:15–42:3, 43:24–44:3.)  In addition, he said that when he is not at the restaurant, no one supervises the wait staff; rather, in his absence, "the employees are helping each other."  (*Id.* 36:9–15.)  Tan's recollection and Chen and Fang's contentions are at odds, and taking reasonable inferences in Tan's favor, the second factor cuts against Chen's argument for summary judgment.

### C. Chen's Role in Determining Compensation

With regard to the third factor, another dispute exists as to what control Chen had over what and how Mr. Pi's staff was paid.  Tan said in her deposition that Chen told her in their initial phone call that the pay was $90 per week (Tan Dep. 46:2–6), and in her affidavit, Tan claims, based on a conversation she had with a co-worker, that Chen determined the amount of each employee's Chinese New Year bonus (Tan Aff. ¶ 8).  Also, based on Chen's comments and her own observations, Tan believed that Chen took part in the decision to deduct a portion of the tips the staff collected.  (*Id.* ¶ 9.)  Chen and Fang again challenge Tan's recollection, stating that Fang alone made all decisions regarding wages and the Chinese New Year "Lucky Money."  (Fang Reply Certif. ¶ 13.)  Two other employees, Shirley Chew and Pek Tho Ng, also stated in their depositions that Chen never talked to them about wages.  (Chew Dep. 38:22–24; Ng Dep. 43:25–44:6.)  Though Chen provides arguably more evidence as to her role in determining compensation than Tan provides, this Court's task at this point in the litigation is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the

nonmoving party." *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009)).  Were a jury to believe Tan's version of the events, it could find that Chen controlled how much and when Mr. Pi's employees were paid.  Therefore, the third factor favors Tan, at least at the summary judgment stage.

### D. Chen's Role in Maintaining Records

Chen's arguments do find support in an examination of the fourth factor, the maintenance of employment records.  Tan stated that Chen never said anything about storing or maintaining Mr. Pi's financial records (Tan Dep. 108:3–20), and though she said Chen signed checks, she did not specifically say that she saw Chen sign checks in her own name (*Id.* 110:11–111:3).  Also, Fang stated that Chen only signs her husband's name to the checks and that he is the only authorized signatory on Mr. Pi's checking account (Fang Dep. 44:15–45:9), a fact borne out by a notarized letter from Mr. Pi's bank (Nizewitz Certif., Ex. G).  Also, the restaurant's accountant said that his employees dealt mostly with Fang, and only rarely spoke to Chen. (Chan Dep. 62:15–63:6.)

Though this fourth factor bolsters Chen's argument, it is important to recall that whether a defendant is an employer is a totality of the circumstances inquiry.  *Maldonado*, 629 F. Supp. at 487.  Therefore, no single factor is dispositive.  *Cf. Martin v. Selker Bros., Inc.*, 949 F. 2d 1286, 1293 (3d Cir. 1991); *see also Wu v. Chang's Garden of Storrs, LLC*, 2010 WL 918079, at *3 (D. Conn. March 11, 2010) (citing *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).  In this case, a reasonable jury could find that Chen engaged in conduct that would make her Tan's employer under the FLSA.  A case from the Southern District of New York with very similar facts supports this conclusion.  There, the wife of the owner of a chain

7

of restaurants was deemed to be an employer because (1) she was involved in setting up the corporations that controlled the restaurants, (2) she conducted initial interviews with job seekers and made hiring decisions on the spot, (3) she assigned work hours, and (4) she determined and paid each employee's wages. *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 265 (S.D.N.Y. 2008). While the circumstances surrounding the wife are arguably distinguishable from the facts at bar in that the wife in *Ke* had an ownership interest in the restaurants, the court found that a friend of the owner was also an employer, even though he had no authority to set wages and did not determine the plaintiffs' workday. *Id.* Nevertheless, the friend was authorized to fire employees, assigned work, and maintained the records of two of the restaurants, and the court found these facts sufficient to establish that he was an employer as defined by the FLSA. *Id.*

### E. Chen's Counterarguments

In her reply brief, Chen argues that, as a matter of law, she cannot be deemed an employer because she is not a corporate officer of Mr. Pi's and does not have authority or control over the restaurant's daily operations. She also argues that where one individual is found to be in charge of a corporate employer's day-to-day operations, other high-level personnel will not be deemed employers of that same corporation. There is no support for this latter claim in the case law. Indeed, because the definition of employer is expansive, two or more persons may be employers of the same business. *Maldonado*, 629 F. Supp. at 487. Chen cites *Reich v. Circle C Invs.*, 998 F.2d 324 (5th Cir. 1993), for the proposition that "where a corporate officer or the person in charge is found to be liable along with the corporate employer, the spouse, even if an officer him/herself[,] will not be deemed to be an employe[r] as well." (Reply Br. 7.) This is an incorrect statement of the holding. In *Circle C*, a husband

8

and wife who operated adult nightclubs were sued, along with their corporate entity, for violating the FLSA's wage and overtime provisions. *Id.* at 326. The court determined that the husband was an employer, even though he had no ownership interest in the corporation, because he "exercised control over the work situation," including hiring dancers, giving instructions, and signing payroll checks. *Id.* at 329. The court made no determination as to the wife because the Secretary of Labor conceded that the evidence did not support a finding that she was an employer. *Id.*

Chen's other argument appears to be that one must be a corporate officer to be deemed an employer under the FLSA. She contends that "only a corporate officer who has authority or control over the corporate employer's daily operations is deemed to be an employer along with the corporation itself, with both criteria being necessary before liability may be found." (Reply Br. 5.) She cites several cases that do indeed deal with situations in which corporate officers were held to be employers under the FLSA. *See PTC Career Inst.*, 1994 U.S. Dist. LEXIS 8503, at *3–4; *Chez Robert*, 821 F. Supp. at 985; *Dole v. Solid Waste Servs.*, 733 F. Supp. 895, 923 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir.); *Brock v. Vafla Corp.*, 668 F. Supp. 1516, 1520 (M.D. Fla. 1987). However, these cases do not support Chen's narrow view of the FLSA. Rather, they unremarkably confirm that the *sine qua non* of employer status under the FLSA is day-to-day control over a business's operations, and that "[t]he corporate form does not shield from individual liability for violations of the Act those officers who act for the corporation in relation to its employees." *Donovan v. Maxim Indus., Inc.*, 552 F. Supp. 1024, 1025 (D. Mass. 1982) (citing *Shultz v. Chalk-Fitzgerald Constr.*, 309 F. Supp. 1255, 1257 (D. Mass. 1970).

## IV. Conclusion

For the foregoing reasons, Chen's motion for partial summary judgment is denied.

9

December 15, 2010

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

10